Lauriat, J.
The plaintiffs in this action, Herminio Guevara (“Herminio”) and Carmen Vargas-Guevara (“Carmen”), individually and as the next friend of Christian Guevara (“Christian”) (hereinafter together the “plaintiffs”), have alleged breaches of G.L.c. 93A and G.L.c. 176D by the defendant, Medical Professional Mutual Insurance Company (“ProMutual”), as the insurer for a medical doctor in an underlying medical malpractice action brought by the plaintiffs. The plaintiffs have now moved, pursuant to Mass.R.Civ.P. 37, to compel the production of certain documents. ProMutual contends that the documents are protected from disclosure by the attorney-client privilege and the work product doctrine. For the reasons stated herein, the plaintiffs’ motion to compel is allowed in part and denied in part.
BACKGROUND
The plaintiffs commenced a medical malpractice action against Dr. Thomas Raskauskas (“Dr. Raskauskas”), an OB/GYN, and several other medical providers, on May 31, 1996, as a result of injuries that Christian allegedly sustained during his delivery and birth on February 23, 1995. Counsel for the plaintiffs initially submitted a claim to Dr. Raskauskas on March 31, 1995, which was forwarded to the doctor’s insurer, ProMutual.
In the course of conducting discovery in the malpractice action, the parties retained expert witnesses and secured their opinions. The discovery also included depositions of the parties and a number of potential witnesses who were present at Christian’s delivery.[1] The parties disclosed their experts and the experts’ expected testimony in their answers to interrogatories and pre-trial conciliation memorandum.[2]
On March 28, 2000, the plaintiffs served a purported G.L.c. 93A demand letter upon ProMutual, seeking the policy limits under the insurance policies *655 of both Dr. Raskauskas and Women’s Health Center. In their letter, the plaintiffs relied on the deposition testimony, asserted that liability was clear, and demanded that ProMutual make a reasonable settlement offer. ProMutual responded to the c. 93A demand on or about April 25, 2000, stating that it had obtained favorable expert reviews and that liability was not clear.
The malpractice action went to trial in November 2000. Prior to trial, the plaintiffs’ settlement demand was $2 million. The juiy ultimately found Dr. Raskauskas negligent and awarded $1.8 million in total damages; the juiy found in favor of the defendant Women’s Health Center. On November 29, 2000, the plaintiffs submitted a demand to ProMutual for full payment of the judgment and reiterated their c. 93A demand. Counsel for ProMutual responded to the plaintiffs’ demand on January 12, 2001.
Both parties filed post-verdict motions, including requests for judgment notwithstanding the verdict. While these motions were pending, the parties agreed to a settlement of $1,038,712.76 in the malpractice case. The plaintiffs reserved their rights against Pro-Mutual as to their G.L.c. 93A/G.L.C. 176D claims, but dismissed with prejudice their claims against Dr. Raskauskas.
On or about October 10, 2001, the plaintiffs initiated the present action against ProMutual, alleging that liability in the underlying medical malpractice case was reasonably clear, and that ProMutual failed to make a reasonable settlement offer. The plaintiffs assert that ProMutual refused to pay their claim without conducting a reasonable investigation based upon all of the available information; and failed to effectuate a prompt, fair and equitable settlement of the claims when liabiliiy was reasonably clear. In response to the plaintiffs’ discoveiy requests in this action, ProMutual filed a motion- for a protective order, seeking to preclude the discoveiy of certain documents allegedly constituting or containing work product and attorney-client matters. The plaintiffs opposed ProMutual’s motion, but on August 8, 2002, the court (Sanders, J.) rejected the plaintiffs’ assertions, and granted ProMutual’s motion for a protective order. The court concluded that the plaintiffs were not entitled to materials protected by the work product doctrine and the attorney-client privilege. Now, the plaintiffs have moved to compel production eighty out of the two hundred and forty-three documents that have been withheld by ProMutual but identified in their privilege log.[3]
DISCUSSION
I.
The “[Resolution of a G.L.c. 93A claim, including the issue of bad faith, depends on a factual determination of the defendant’s knowledge and intent.” O’Leary-Alison v. Metropolitan Property and Cas. Ins. Co., 52 Mass.App.Ct. 214, 217, rev. denied, 435 Mass. 1104 (2001). As the Supreme Judicial Court has most recently stated:
General Laws c. 93A, §2(a) states that “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” General Laws c. 176D, §3, in turn, prohibits “unfair or deceptive acts or practices in the business of insurance,” including, in subsection (9)(f), the failure “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.”
Bobick v. U. S. Fidelity, 439 Mass. 652, 658 (2003). The SJC further stated that:
the former statute incorporates the latter, and accordingly an insurer that violated G.L.c. 176D, §3(9) (f) by failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, by definition has violated the prohibition in G.L.c. 93A, §2, against the commission of unfair or deceptive acts or practices.
Bobick, 439 Mass. at 658-59, quoting Hopkins v. Liberty Mut Ins. Co., 434 Mass. 556, 564 (2001). These statutes, taken together, require an insurer such as ProMutual to “promptly . . . put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in G.L.c. 93A, §(9)(3), or as soon thereafter as liability and damages make themselves apparent.” Bobick, 439 Mass. at 659, quoting Hopkins, 434 Mass. at 566.
In order to make out a claim against an insurer for unfair settlement practice and unfair or deceptive act or practice under consumer protection law, a claimant must establish both that an unfair trade practice occurred, and that the unfair practice resulted in loss to the claimant. Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 57 (1st Cir. 1999) (“[i]t is an unfair settlement practice, and also an unfair or deceptive act or practice under . . . c. 93A, if an insurance company fails to effectuate prompt, fair and equitable settlements of claims in which liabiliiy has become reasonably clear”).
Whether an insurer’s liability became “reasonably clear” under G.L.c. 176D “calls for an objective standard of inquiiy into facts and ... law” and “calls upon the fact-finder to determine whether a reasonable person, with knowledge of relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.” Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass.App.Ct. 955, 956-57 (1995). General Laws c. 176D is not violated if the insurer’s liabiliiy was not “reasonably clear.” Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 343, rev. denied, 418 Mass. 1102 (1994) (emphasis added). The word “liability” in the statute encompasses both fault and damages as applied to a liability insurer’s duty to *656 settle a claim. O’Leary-Alison, 52 Mass.App.Ct. at 217. The “relevant inquiry,” therefore, is whether ProMutual “reasonably believed that its insured’s liability with respect to damages was not clear.”[4] O’Leary-Alison, 52 Mass.App.Ct. at 217, citing Bolden v. O’Connor Café of Worcester, Inc., 50 Mass.App.Ct. 56, 67 (2000). “A plausible, reasoned legal position that may ultimately turn out to be mistaken — or simply,... unsuccessful — is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.” Guity, 36 Mass.App.Ct. at 343, citing Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987) (additional citation omitted).
II.
ProMutual asserts that the plaintiffs’ motion to compel must be denied because the court has already rejected the plaintiffs’ assertions. On August 8, 2002, the court (Sanders, J.) allowed ProMutual’s motion for a protective order. Guevara v. Medical Professional Mut Ins. Co., No. 01-4354L (Mass. Super. August 8, 2002). That motion sought to preclude the production of the portions of ProMutual’s claim file which allegedly constituted attorney-client and work product privilege. Id. The court allowed the motion “both as to privileged documents and as to billing records which are not relevant” in the case against ProMutual. Id. The court did not, however, issue a ruling as to which documents were privileged under the work product doctrine, nor did the court decide whether documents that would have been privileged work product in the underlying medical malpractice action would qualify as privileged work product in the subsequent consumer protection litigation against ProMutual. Id.
III.
Pursuant to Mass.R.Civ.P. 26 (b), “(p)arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action [if] it relates to the claim or defense of the party seeking discovery.” Mass.R.Civ.P. 37(a) allows a party “[u]pon reasonable notice to other parties and all parties affected thereby,” to “apply for an order compelling discovery.” However,
a party may obtain discovery of documents and tangible things otherwise discoverable . .. and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
Mass.R.Civ.P. 26 (b)(3).[5] The burden is upon the party resisting discovery, here ProMutual, to demonstrate that the materials sought are in fact work product within the scope of Mass.R.Civ.P. 26 (b)(3). Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 605 (D.Mass. 1992), Harris v. Steinberg, No. 93-1373G, 6 Mass. L. Rptr. 417, 1997 WL 89164 (Mass. Super. 1997).
“The work product doctrine ... is intended to enhance the vitality of an adversary system of litigation by insulating counsel’s work from intrusions, interferences, or borrowings by other parties as he prepares for the contest." Ward v. Peabody, 380 Mass. 805, 817 (1980), citing Hickman v. Taylor, 329 U.S. 495 (1947). “The field of operation of the work product rule is, as indicated, preparation for litigation.” Ward, 380 Mass. at 817 (internal citations omitted).
In Massachusetts, “[i]t is an unsettled question whether the work product doctrine continues to apply to documents after the litigation for which the documents were created has ended.” Discovery, 49 MASS. PRAC. §2.8, 89 (2001); compare Ward, 380 Mass. at 818 (implying that work product doctrine ceases to apply to documents after the litigation for which the documents were created has concluded); and contrast Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 309 (1991) (noting that requested internal documents created by Attorney General’s Office on prior related litigation would not be discoverable in accordance with work product doctrine). See also Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269, 275 (1991) (work product doctrine “protects documents prepared in previous litigation”); A.W. Chesterton Co. v. Allstate Ins., No. 964871, 12 Mass. L. Rptr. 24, 550 (Mass. Super. January 22,2001) (“the work product privilege applies to documents created in anticipation of litigation other than the litigation in which the documents are sought”).
In the recent decision of Sanchez v. Wintham, 2003 Mass.App.Div. 48 (2003), the Appellate Division provided some guidance in considering a similar issue in a procedurally distinct matter. Sanchez involved an underlying automobile tort action seeking recovery on a negligence claim against an individual and seeking to recover against a corporate defendant for alleged unfair settlement practices in violation of G.L.c. 176D. 2003 Mass.App.Div. at 48. The insurer opposed certain discovery requests made by the plaintiff “based on the concern that the discovery of the mental impressions, conclusions, evaluations and opinions of [the insurer’s] claim representative w[ould] compromise the ability” of the individual defendant to advance her defense properly. Sanchez, 2003 Mass.App.Div. at 50. Responding to these concerns, the court stated:
Generally, the very documents that evidence work product are documents that are the most central to a bad faith settlement claim. They are “at issue” in resolving the consumer protection claim. It is from these documents that a litigant is likely to learn what impressions of liability existed at the time of the settlement discussions prior to suit. The question is whether this relevant work product is discoverable.
*657 Id., citing COUCH ON INSURANCE 3D, §251:27. Analogizing the situation before it to the SJC’s decision in Ward, the Appellate Division found that work product is discoverable when the work product itself is “at issue.” Sanchez, 2003 Mass.App.Div. at 50, citing Ward, 380 Mass. at 818. The Sanchez court concluded that the “work product” being considered was “central to the evaluation of [the plaintiffs] assertion that [the insurer] knew that liability was reasonably clear and failed to offer a reasonable settlement in violation of G.L.c. 176D and G.L.c. 93A.” Sanchez, 2003 Mass.App.Div. at 50.
The Appellate Division ultimately upheld the District Court’s qualified allowance of the plaintiffs motion to compel discovery. Sanchez, 2003 Mass.App.Div. at 51. The District Court had “ordered the production of all documents prepared after [the plaintiffs] insurance claim was filed, but before her G.L.c. 93A demand letter was sent, [and] ordered the production of some documents prepared after the G.L.c. 93A letter was sent, but before th[e] action [before the court] was commenced.” Id. at 49. The court denied the plaintiffs request for discovery of documents prepared after the G.L.c. 93A action had commenced. Id. (emphasis added).
In this case, the underlying medical malpractice action has concluded, and thus there can be no concern by ProMutual that discovery of such documents will preclude Dr. Raskauskas from advancing a proper defense. The policy underlining the work product doctrine is not implicated in a case like this where:
the words and deeds of the attorney are themselves subject to the relevant inquiry... Otherwise stated, in the singular instances “when the activities of counsel are inquired into because they are at issue in the action before the Court, there is cause for the production of documents that deal with such activities, though they are work product.”
Ward, 380 Mass. at 818, quoting in part, 4 MOORE’S FEDERAL PRAC. par. 26.62 [4], at 26-477 (2d Ed. 1979). For these reasons, the documents sought by the plaintiffs that relate solely to the defense of the underlying medical malpractice action are discoverable, but those documents created for the purpose of defending the G.L.c. 93A and G.L.c. 176D claims are not discoverable.
In accordance with this reasoning, the documents created in anticipation of litigation prior to the commencement of the G.L.c. 93A action may be discovered by the plaintiffs because this court finds that they are not privileged work product, even-if these documents would have constituted work product in the medical malpractice action. The plaintiffs submitted their purported G.L.c. 93A demand letter to ProMutual on March 28, 2000. As such, the sixty-five (65) documents created before March 28, 2000 need further consideration by the court as to whether they should be produced by ProMutual. The fifteen documents that were created after March 28, 2000 — documents numbered 5-11, 17-23 and 67 in ProMutual’s privilege log — need not be disclosed, since they are work product in the present litigation, and the plaintiffs have failed to show substantial need or any resulting undue hardship.[6]
IV.
The next issue the court must address is whether the remaining documents fall within the purview of the attorney-client privilege. The attorney-client privilege protects from disclosure communications between a client and his or her attorney. Judge Rotenberg Educational Center, Inc. v. Commissioner of the Dept. of Mental Retardation, 424 Mass. 430, 457 n. 26 (1997). This privilege “applies only when the client’s communication was for the purpose of facilitating the rendition of legal services.” Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997). This privilege is “founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.” Purcell, 424 Mass. at 116.
The “principal difference between the attorney-client privilege and the work product doctrine, in terms of protections each provides, is that the [attorney-client] privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney’s work product.” National Employment Service Corp. v. Liberty Mut. Ins. Co., No. 93-2528-G, 1994 WL 878920 (Mass. Super. Ct. 1994) (Welch, J.). When “faced with questions regarding the attorney-client privilege,” the privilege is “strictly construed” and the “existence of the [privilege] and the applicability of any exception to the privilege is a question of fact for the judge.” In re Reorganization of Electric Mutual Liability Ins. Co., 425 Mass. 419, 421 (1994). The burden of showing the attorney-client privilege applies to a communication rests on the party asserting the privilege. Id. As the SJC has stated:
This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including (1) the communications were received from a client in the course of the client’s search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived.
Id., citing Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 604 (D.Mass. 1992) (additional citations omitted).
The privilege log submitted by ProMutual asserts that every document withheld — each of the 243 — is subject to the attorney-client privilege. Of the sixty-five *658 remaining documents not protected pursuant to the work product privilege, as discussed in Part III, suprcu, sought by the plaintiffs (documents 1-4, 12-16, 24-66, and 68-80) only thirty-nine (39) of the documents (documents numbered 12-13, 24-26, 28-35, 37, 39-44, 46, 49, 51-56, 58-63, 68, 73-75 and 77) are identified on the privilege log as communications between an attorney and another person. Therefore, only these thirty-nine documents will be initially considered by the court as possibly subject to the attorney-client privilege. Twenty-three (23) documents — those numbered 1-4, 14-16, 27, 36, 38, 45, 47-48, 50, 57, 64-66, 69-72, 76 and 78-80 — -do not fall within the purview of the attorney-client privilege on the face of the privilege log and therefore shall be produced.
Because the attorney-client privilege protects communications between a client and a lawyer, specifically requiring the person asserting the privilege to be or to have sought to become a client of the lawyer, see Bays v. Theran, 418 Mass. 685, 691 (1994), the court must initially consider which client or clients here is or are asserting the privilege. It is evident from the documents before the court that the insured, Dr. Raskauskas, is asserting attorney-client privilege as to communications between himself and Attorney Reidy and representatives from the firm of Martin, Magnuson, McCarthy & Kenney, and pursuant to an affidavit filed, he has specifically refused to waive this privilege for purposes of the present action.[7] Therefore, any communications made to Dr. Raskauskas’ counsel by Dr. Raskauskas, that were made with a view to obtaining the lawyer’s legal advice, opinions or assistance in a legal matter, see Judge Rotenburg Educational Center, 424 Mass. at 457, and that were made without others being present or being copied, and that were made with the expectation that the matters discussed would not be disclosed to others, see Peters v. Wallach, 366 Mass. 622, 627 (1975), will be protected from disclosure because they are privileged. The documents before the court also make clear that ProMutual is also asserting an attorney-client privilege as to communications between it and attorneys at the law firms it retained to provide advice as to the c. 93A claim.[8]
ProMutual has failed to meet its burden of establishing that the attorney-client privilege protects it from disclosing documents 12-13, 24-26, 28-35, 37, 39-44, 46, 49, 51-56, 58-63, 73-75 and 77. There is no evidence in the privilege log submitted to the court that these documents contain information that was “received from a client in the course of the client’s search for legal advice from the attorney in his or her capacity as such.” In re Reorganization of Electric Mutual Liability Ins. Co., 425 Mass. at 421. Therefore, the court concludes that documents 12-13, 24-26, 28-35, 37, 39-44, 46, 49, 51-56, 58-63, 73-75 and 77 do not fall within the purview of the attorney-client privilege based on the record before the court. If any of these documents contain information received from Dr. Raskauskas in the course of his search for legal advice, then such information shall be redacted from the documents ordered disclosed and the fact of those redactions shall be noted in a separate log. Document 68 shall not be disclosed, as it is a legal bill and pursuant to the court’s order of August 8, 2002, it is not relevant. Guevara, No. 01-4354-L (Mass. Super. August 8, 2002).
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiffs’ Motion to Compel Production of Documents Pursuant to M.R.C.P. 37 is ALLOWED in part, and DENIED in part.
Defendant Medical Professional Mutual Insurance Company is hereby ORDERED to produce documents numbered 1-4, 12-16, 24-66, and 69-80 to the plaintiffs. It is further ORDERED that documents numbered 5-11, 17-23 and 67 and 68 shall not be disclosed.

These witnesses included various nurses and certain relatives and friends of the plaintiffs.

Both before the medical malpractice tribunal and at trial, the plaintiffs relied on the expert testimony Dr. Theodore King. Dr. Raskauskas identified both Dr. David Acker and Dr. Alan Pinshaw as experts he intended to rely on.

The plaintiffs request that the court conduct an in camera review of the eighty documents sought in their motion to compel. At this time, the court will restrict its analysis to the parties’ memoranda and the privilege log itself.

ProMutual filed a motion for summary judgment in this case on July 7, 2003, and therein contend that given the trial testimony of their retained expert, Dr. Acker, and given Dr. Raskauskas’ own assertions that he did not deviate from the standard of care, ProMutual is entitled to summary judgment as a matter of law. The plaintiffs oppose this motion. To date, this motion has not been heard or determined.

As stated in the Reporter’s Notes to Mass.R.Civ.P. 26:
The first paragraph of Rule 26(b)(3) regulates the discovery of material prepared in anticipation of litigation. First, such materials are not discoverable at all, unless, they meet the requirements of Rule 26(b)(1); that is they must be relevant to the subject matter of the pending action and/or reasonably calculated to lead to the discovery of admissible evidence. Second, the party seeking discovery must show (a) that he has substantial need of the materials to prepare his case and (b) that he would sustain severe hardship were he forced to obtain the equivalent of such materials by means other than discovery . . . Third, in keeping with the rule of Hickman v. Taylor, 329 U.S. 495 (1947), discovery, except in extremely unusual circumstances, may not be had of an attorney’s mental impressions and similar intellectual work product . . . This pertains to “mental impressions and subjective evaluations of investigators and claim-agents.”
Reporter’s Notes (1973), quoting in part, 48 F.R.D. 500, 502 (1970).

The work product rule does not automatically excuse the production of these materials sought. See Ward, 380 Mass. at 818. Documents that might be “subject to the conditional “work product’ privilege . .. may be ordered produced where, ... the plaintiff has a substantial need of the materials in the preparation of [their] case and is unable, without undue hardship, to obtain the substantial equivalent of the materials by any other means.” Hirshenfang v. City of Boston, No. 934903E, 1994 WL 879744, 1 Mass. L. Rptr. 503, at *2 (Mass. Super. 1994) (Fremont-Smith, J.). The plaintiffs allege that *659 they have this substantial need for the documents as they will allow them to prove the bad faith portion of their claim against ProMutual, and the plaintiffs contend that the equivalent evidence is not available from any other source. To date, according to the plaintiffs, ProMutual has provided no documents which relate to the manner in which it handled, reviewed or evaluated the underlying case or its reasons for its actions.
If the court were to order the production of documents which can be properly categorized as work product, “[a]ny statements of mental impressions, conclusions, opinions or legal theories of any representatives of [ProMutual] . . . shall be redacted from the documents prior to production . . .” Hirshenfang , at *2, Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co., 414 Mass. 609, 616 (1993). These types of mental impressions are considered “opinion work product” and are protected from disclosure under any and all circumstances. Mass.R.Civ.P. 26 (b)(3), see Hull Municipal Lighting Plant, 414 Mass. at 616. “The purpose of this protection is to ensure that attorneys can make candid analyses of cases and reduce unfavorable facts or conclusions to writing.” Discovery, 49 MASS. PRAC. §2.8, 89 (2001).

See Affidavit of Charles Reidy, Esq., attached as Exhibit L to the Defendant’s Opposition to the Plaintiffs Motion to Compel.

As noted above, all of the documents in regard to the plaintiffs’ G.L.c. 93A/176D claim are privileged under the work product doctrine and hence there are no communications between ProMutual and their counsel from the law firms of Palmer & Dodge and Morrison Mahoney & Miller that require the court’s consideration here.