In the Matter of the Reorganization of Electric Mutual Liability Ins. Co. Ltd. (Bermuda).

IN THE MATTER OF THE REORGANIZATION OF ELECTRIC
MUTUAL LIABILITY INSURANCE COMPANY LTD. (BERMUDA).

Suffolk. March 6, 1997. - July 11, 1997.

Present: ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Moot Question. Practice, Civil,* Moot case. *Evidence,* Privileged communication. *Attorney at Law,* Attorney-client relationship. *Waiver.*

This court declined to review the correctness of an interlocutory order regarding the use of certain documents in civil litigation that one party claimed were subject to the attorney-client privilege, where the underlying litigation had been dismissed. [420-421]

Discussion of the attorney-client privilege and waiver thereof with respect to documents whose contents by some means have been disclosed. [421-423]

CIVIL ACTIONS commenced in the Superior Court Department on November 30, 1995, December 1, 1995, December 4, 1995, and December 15, 1995, respectively.

A motion for in camera review and court directive was heard by *Charles T. Spurlock,* J.

An application for relief from an interlocutory order was considered by *Frederick L. Brown,* J., in the Appeals Court, and a question of law was reported by him to a panel of that court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Scott P. Lewis (Katharine A. Pacella* with him) for Kemper Reinsurance Company.

*Thomas S. Martin,* of New York *(Ian Crawford* with him) for Electric Mutual Liability Insurance Company, Ltd. (Bermuda).

The following submitted briefs for amici curiae:

*Nick J. DiGiovanni & R.R. McMahan* of Illinois *& Alice E. Richmond & Ann Pauly* for Certain Underwriters at Lloyd's, London.

*Donald K. Stern,* United States Attorney, *& Paul G. Levenson,* Assistant United States Attorney, for the United States of America.

*Scott Harshbarger*, Attorney General, *J. David Leslie*, Special Assistant Attorney General, *& Eric A. Smith*, for the Commissioner of Insurance.

LYNCH, J. This case arises from the approval by the Commissioner of Insurance (commissioner) of the application of Electric Mutual Liability Insurance Company (EMLICO) to reorganize and redomesticate to Bermuda. Allstate Insurance Company, Kemper Reinsurance Company, and other reinsurance companies sought judicial review of this decision. While these consolidated actions were pending in the Superior Court, counsel for Allstate received two documents from an anonymous source. According to the reinsurers, these documents support their claim that EMLICO deceived the commissioner by misrepresenting its financial condition at the time it sought to reorganize and to move to Bermuda.

A Superior Court judge found that any privilege with respect to the documents had been waived; EMLICO appealed to a single justice of the Appeals Court who denied its petition for relief. The single justice, however, imposed several conditions on the use of the documents. The latest amendment to his original order allows for broad use of the documents. It provides that "nothing in the Amended Order shall limit the use that the Division of Insurance may make of the documents in any proceedings related to its examination of [a former EMLICO subsidiary that was acquired by a trust company as part of EMLICO's reorganization]" or "the use that any of the litigants in the consolidated Superior Court actions may make of the two documents in any civil litigation (in Massachusetts courts or elsewhere), in any private arbitrations, or in any proceedings before the Division of Insurance, provided that such litigation, arbitrations or proceedings are related to the redomestication of EMLICO." When Kemper received a subpoena from a Federal grand jury for the two documents, however, the single justice referred to a panel of the Appeals Court the question, "Whether Kemper Reinsurance Company may produce in response to a federal grand jury subpoena the two disputed documents which EMLICO claims are protected by the attorney-client privilege, but Kemper Re [*sic*] claims that any privilege has been waived." We transferred the case here on our own motion.

After oral argument before this court the actions were dismissed in the Superior Court. We are thus faced with the unusual situation of reviewing an interlocutory order entered in actions

that have since been dismissed. Although the order of dismissal is being appealed, we regard the question which arises from this interlocutory appeal as moot.[1] Were we to answer the question, we would be guided in our answer by Federal law. See Fed. R. Evid. 501 (1997).[2] We also take note of the fact: "When compliance with a federal subpoena compelled by the Supremacy Clause is at the same time the only act which could be a violation of state law, there remains no room for state law sanction." *In re Hampers*, 651 F.2d 19, 21 (1st Cir. 1981).

When we are faced with questions regarding the attorney-client privilege, we are guided by the following principles. The privilege is ordinarily strictly construed. See *Three Juveniles* v. *Commonwealth*, 390 Mass. 357, 359-360 (1983), cert. denied sub nom. *Keefe* v. *Massachusetts*, 465 U.S. 1068 (1984); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979). The existence of the privilege and the applicability of any exception to the privilege is a question of fact for the judge. *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 113 (1997). The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege. *Id.* at 115. This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including (1) the communications were received from a client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived. See *Colonial Gas Co.* v. *Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 604 (D. Mass. 1992); *In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849, 855 (D. Mass. 1995); *Resolution Trust Corp.* v. *Dean*, 813 F. Supp. 1426,

---

[1]Accordingly, Kemper's motion to strike portions of EMLICO's brief is also moot.

[2]Federal R. Evid. 501 (1997) states: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

In the Matter of the Reorganization of Electric Mutual Liability Ins. Co. Ltd. (Bermuda).

1428 (D. Ariz. 1993) ("[i]n order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver of the privilege"). See also M.A. Larkin, Federal Testimonial Privileges § 2.05, at 2-114 to 2-115 n.156 (1997).

The traditional view was that, once the contents of a document had become public regardless of the means by which this came about, the document's confidentiality and privilege had been destroyed. 8 J. Wigmore, Evidence § 2325 (McNaughton rev. ed. 1961). See Smith v. Armour Pharmaceutical Co., 838 F. Supp. 1573, 1576 (S.D. Fla. 1993). Thus, even documents which became public as a result of theft were no longer considered privileged. 8 J. Wigmore, Evidence, supra at § 2326. The modern trend, however, has moved toward a principle that the privileged status of a communication or document is not lost when an attorney and client take reasonable precautions to ensure confidentiality but, for example, a privileged communication is nonetheless overheard. See S.N. Stone & R.K. Taylor, Testimonial Privileges § 1.54, at 1-143 (2d ed. 1995) ("there is a trend toward the view that the inadvertent loss, interception, or disclosure of privileged communications does not destroy the privilege, so long as reasonable precautions against such disclosure are taken"); 2 J. Weinstein & M. Berger, Weinstein's Evidence, par. 503(a)(4)[01], at 503-43 (1993) ("[c]ommunications which were intended to be confidential but are intercepted despite reasonable precautions remain privileged"); McCormick, Evidence § 74, at 275-276 (4th ed. 1992).[3] See also Smith v. Armour Pharmaceutical Co., supra (discussing modern trend that has moved away from certain concepts espoused by Wigmore); In re Grand Jury Proceedings Involving Berkley & Co., 466 F. Supp. 863, 869 (D. Minn. 1979) (same [on motion to reconsider]). While it may perhaps have been tolerable in the past to penalize a client for failing to achieve secrecy, such a position has become outmoded in an era of sophisticated eavesdropping and infiltration devices "against which no easily available protection exists." 2 J. Weinstein & M. Berger, Weinstein's Evidence, supra at par. 503(b)[02], at 503-52.

---

[3]Moreover, Wigmore has recognized that a privilege is not lost when an attorney acts in bad faith toward his client and discloses privileged communication without the client's approval and against the client's interest. 8 J. Wigmore, Evidence § 2325 (1), at 633 (McNaughton rev. ed. 1961).

In short, the disclosure of a document by an anonymous source may not, by itself, mandate a conclusion that any privilege has been waived. See *Resolution Trust Corp.* v. *Dean, supra* at 1429-1430 (where leak of otherwise privileged document remained inexplicable and proponent of the privilege affirmatively demonstrated precautions were taken to secure confidentiality of document, no voluntary waiver of privilege found); *In re Dayco Corp. Derivative Sec. Litig.,* 102 F.R.D. 468, 470 (S. D. Ohio 1984) (where no indication that party voluntarily gave otherwise privileged diary to reporter, publication of excerpts of diary should not be considered waiver of privilege). Indeed, it is fundamental that only a client can waive the attorney-client privilege. *Matter of a John Doe Grand Jury Investigation,* 408 Mass. 480, 483 (1990). Thus, a client may be deemed to have met the burden of establishing that a privilege exists and no waiver has occurred if adequate steps have been taken to ensure a document's confidentiality. We recognize, of course, that the mere fact a document may have been stolen or disclosed in bad faith may suggest inadequate precautions have been taken. Where it can be shown, however, that reasonable precautionary steps were taken, the presumption will be that the disclosure was not voluntary and therefore unlikely that there has been a waiver.[4] See *Hoy* v. *Morris,* 13 Gray 519, 521 (1859) (referring to "want of proper precaution" resulting in communication not being considered privileged).

*Appeal dismissed.*

---

[4]Our view of waiver appears to comport with rule 510 of the Proposed Massachusetts Rules of Evidence: "A person upon whom these rules confer a privilege against disclosure waives the privilege, if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter."