van Gestel, J.
This Memorandum addresses two motions by the plaintiff Commerce & Industry Insurance Company (“C&I”) seeking to compel the return of certain inadvertently produced documents. The motions concern discovery relating to claims arising out of the fire at Malden Mills occurring on December 11, 1995.
The documents in issue[1] were produced in response to an extensive document request by the defendant E.l. duPont de Nemours and Company (“duPont”) directed to C&I and served on May 12, 1999. In response to the request, C&I, in the summer and fall of 1999, produced more than 300,000 pages[2] of documents in several phases. As part of the production, C&I’s counsel reviewed the documents to determine whether they were protected from discovery by the attorney-client privilege or the work product doctrine. A lengthy 150-160 page preliminary privilege log of documents to be withheld was created.
C&I engaged an outside vendor, Conley & Hodge/Uniscribe (“C&H”), an established and experienced provider of litigation support services, to assist in the document production process. Under C&I’s counsel’s supervision, C&H was responsible for copying, Bates-stamping, scanning, organizing, storing, removing and stamping documents designated as privileged, and shipping the remaining documents to the defendants’ counsel. C&H was provided with C&I’s counsel’s preliminary privilege log, and was instructed to remove those documents appearing on the log from the copies to be produced to duPont.
Due to an error, C&H worked from an incomplete copy of the privilege log, which was missing fourteen pages. As a result, C&H failed to remove approximately 1500 pages from the boxes produced to duPont.
This error went undetected, and therefore was compounded, when counsel for C&I, for a third time, reviewed the documents just before production using the deficient privilege log provided by C&H.
In July of 2000, counsel for C&I received a telephone call from counsel for Bayer Corporation, one of the several defendants, informing him that some documents may have been inadvertently produced.[3] After receiving the call, C&I’s counsel investigated and learned of the extent of the inadvertent production.
All of defendants’ counsel, while resisting return of the documents, have voluntarily agreed to make no further use of the documents until this Court has had an opportunity to rule on C&I’s motions.
The parties have been attempting to resolve the issues regarding the inadvertently produced documents. As a result, as of the time of filing of C&I’s first motion on November 22, 2000, C&I claimed only that the documents bearing the following Bates-stamp numbers remained in issue:[4]
PAR041571-72; PAR041584-88; PAR041595-97; PAR041630-48; PAR041649-51; PAR041655-57; PAR041659-75; PAR041689-92; PAR041711; PAR041733-36; PAR041807-16; PAR041827-29; PAR041833-36; PARQ41855-56; PAR041858-59; PAR041932-35; PAR041937-39; PAR042038; PAR042040-41; PAR042055; PAR042056-74; PAR042063-74; PAR042076-77; PAR042246-51; PAR042399-406; PAR042472-89; PAR042522-23; PAR042596-637; PAR042672-75; PAR042721-27; PAR042730-37; PAR042830-40; PAR042842-43; PAR042849-56; PAR042879-80; PAR042881-82; PAR042883-87; PAR042895-908; PAR042909; PAR042916-918; PAR042919-57; PAR042959-77; PAR042979-86; PAR043038-158; PAR043160-62; PAR043179-96; PAR043198-213; PAR043224-44; PAR043255-57; PAR043399-406; PAR043582-83; PAR043592-97; PAR044104-12; PAR044118-21; PAR044348-49; PAR044422-26; PAR044576-77; PAR044719-27; PAR045092-94; PAR045118-21; PAR045234-37; PAR045665-66; PAR045675-76; PAR045911-32; PAR046258-63; PAR046271-78; *575 PAR046672; PAR046813-16; PAR046820-23; PAR047107-10; PAR047299-307; PAR047393-95; PAR048503-12; PAR001041; PAR038982-9015; PAR039017-19; PAR039020-34; PAR039036-39; PAR039041; PAR039043-44; PAR039047-52; PAR039057-61; PAR039073; PAR039076-84; PAR039092-96; PAR039110-17; PAR03912-23; PAR039125-26; PAR039137-42; PAR039146; PAR039151-53; PAR039159; PAR039168-83; PAR039188-96; PAR039200-02; PAR039204; PARO 3 92 31 -32; PAR039236-37; PAR039241; PAR039277-79; PAR039283-301; PAR039309-11; PAR039314; PAR039316-17; PAR039319; PAR039322-24; PAR039328-32; PAR039390-302; and PAR039396-400.
Thereafter, on December 1, 2000, C&I filed with the Court a second motion to compel the return of newly discovered inadvertently produced documents. In its supporting memorandum C&I states that these additional documents are “duplicate copies” of those documents covered by its first filed motion. These additional documents are said to bear the following Bates-stamp numbers;
PAR041707-08; PAR/M036318; PAR/M03636566; PAR/M027309; PAR/M028395-400; PAR/M024356; BOSO 12384-87; BOS012391-94; PAR002290-91; PAR002293-94; ADJ009357-58; BOSO 13030-01; BOS013033-34; B0X013215-16; BOS013218-19; BOS013397-98; BOS012398; ADJ009816-33; BOS026536-42; PAR/M026615-16; PAR003179; PAR003196; PAR042194; PAR/M038566; ADJ008985-88; PAR003420-3421; PAR042869-42870; PAR/M029634-37; BOS01558081; PAR/M030067-68; BOS014640-41; BOS01013310136; BOSO 10636-10639; ADJ04897-98; BOS009909-10; BOS010412-13; PAR/M027522-23; PAR007243-47; PAR/M027511-12; ADJ004232; PAR008057; BOS014225; PAR/M033001; PAR045099; BOS0141180-81; BOS024713-14; PAR009366-71; PAR/M025241-46; PAR/M025484; PAR010009-12; 2BOS002053-56; PARO 10349-52; PARO 10527-10529; PAR010530-36; ADJ001880-86; BOS007316-22; BOSO 18388 1-87; and PAR/M025220-26.[5]

DISCUSSION

When faced with questions regarding the attorney-client privilege and the work product doctrines, strict construction of each usually is required. The existence of any privilege and the applicability of any exception thereto is a question of fact for the Court. The burden of proving that a privilege or work product protection applies rests on the party asserting it. See In re Reorganization of Electric Mutual Liability Insurance Company. Ltd. (Bermuda), 425 Mass. 419, 421 (1997) (hereafter “EMLICO”). “The modern trend . . . has moved toward a principle that the privileged status of a communication or document is not lost when an attorney and client take reasonable precautions to ensure confidentiality but, for example, a privileged communication is nonetheless overheard.” Id. at 422. The attorney-client privilege, after all, belongs to the client, not to its attorney. It cannot be consciously and intentionally waived by the lawyer. See, e.g., In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 482-83 (1990). It should not, therefore, be too easily inadvertently waived by counsel either. Thus, to this Court, this middle-ground resolution seems more than an appropriate balance between the significance of the attorney-client privilege and the work product doctrine and the mandate for liberal discovery, given the immense burden placed upon trial counsel in a complex and document-heavy case. See, e.g., Amgen, Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290-92 (D. Mass. 2000).
“Where it can be shown ... that reasonable precautionary steps were taken, the presumption will be that the disclosure was not voluntary and therefore unlikely that there has been a waiver.” EMLICO, supra, 425 Mass. at 423 and n.4.
Thus, the question for the Court at this stage becomes whether adequate steps — e.g., “reasonable precautions” — were taken by C&I and its counsel to ensure that the documents in question retained their confidentiality. It must be obvious that the precautions cannot be deemed less than reasonable solely because they failed. Rather, when put in place, did the precautions then seem reasonable for the task at hand?
The adversary process has long since discarded the games of hide-and-seek and trial by ambush. “(T]he rules of civil procedure are instruments for the promotion of justice .. . not the exaltation of mere technicalities.” Beaupre v. Cliff Smith & Associates, 50 Mass.App.Ct. 480, 484 n.8 (2000). The Dickensian approach of pleading-at-your-client’s-peril has been appropriately interred. “Our judicial system is not ‘a mere game of skill or chance’ in which the judge is merely an ‘umpire.’ ” O’Connor v. City Manager of Medford, 7 Mass.App.Ct. 615, 619 (1979). Both lawyers and the judges before whom they appear must work together in a system that operates on a level playing field, where the controversies and disputes of the day may be resolved as justly and fairly as possible. Inadvertent error does not fit comfortably in such a system.
What is “adequate” in protecting the privileged nature of documents and assuring the viability of the work product doctrine must be assayed with a judicial eye sensitive to the realities of complex litigation. When producing huge masses of documents, that are themselves the product of a major catastrophe subject itself to far-reaching and extensive regulatory investigation, one must expect that those involved will seek out the careful guidance of lawyers in all aspects of the process. It is just such a situation that will, of necessity, generate vast amounts of attorneys work *576 product and result in great numbers of client-privileged writings.
In the tension that results directly from the conflict between liberal discovery pursuant to the Rules of Civil Procedure, fired by the obligation imposed on counsel for zealous advocacy, and the client’s privilege for communications with its counsel, reinforced as that privilege is by the attorneys ethical duty to preserve the confidences and secrets of the client, SJC Rule 3:07, Rule 1.6, there comes a limit to the amount of time and effort high-priced lawyers must be compelled to spend, at great cost to their clients and the public’s view of the legal system, in policing the production of documents. To review each of hundreds of thousands of documents, create a detailed privilege log, engage a litigation support company of high reputation in a community with the sophistication of Boston, and direct the physical aspects of numbering, copying and delivery of documents all in a manner consistent with a detailed privilege log, was, under the circumstances here, what could be thought to be an adequate precaution to preserve any privilege or protection to which those documents were entitled.[6]
The Court has a sense that a stronger argument for waiver may exist with regard to the documents included in the second motion filed on December 1, 2000. No real explanation has been proffered for their inadvertent production, and C&I has been on notice since at least July 12, 2000, of potential problems with its documentary production. Delay in seeking relief from inadvertence is an element to weigh in the balancing process to be performed. See, e.g., Amgen, supra, 190 F.R.D. at 292. Yet here, the Court is still inclined toward protection of the confidential nature of the documents because, despite the delay, they are described as duplicate copies of documents for which adequate protection has been found. Thus, they too must be returned.

ORDER

After hearing the parties, and for the foregoing reasons, this Court finds that Commerce & Industry Insurance Company has not waived any attorney-client privilege or protection afforded by the work product doctrine that may exist with respect to the documents bearing the following Bates-stamp numbers, which were inadvertently produced:
PAR041571-72; PAR041584-88; PAR041595-97; PAR041630-48; PAR041649-51; PAR041655-57; PAR041659-75; PAR041689-92; PAR041711; PAR041733-36; PAR041807-16; PAR041827-29; PAR041833-36; PAR041855-56; PAR041858-59; PAR041932-35; PAR041937-39; PAR042038; PAR042040-41; PAR042055; PAR042056-74; PAR042063-74; PAR042076-77; PAR042246-51; PAR042399-406; PAR042472-89; PAR042522-23; PAR042596-637; PAR042672-75; PAR042721-27; PAR042730-37; PAR042830-40; PAR042842-43; PAR042849-56; PAR042879-80; PAR042881-82; PAR042883-87; PAR042895-908; PAR042909; PAR042916-918; PAR042919-57; PAR042959-77; PAR042979-86; PAR043038-158; PAR043160-62; PAR043179-96; PAR043198-213; PAR043224-44; PAR043255-57; PAR043399-406; PAR043582-83; PAR043592-97; PAR044104-12; PAR044118-21; PAR044348-49; PAR044422-26; PAR044576-77; PAR044719-27; PAR045092-94; PAR045118-21; PAR045234-37; PAR045665-66; PAR045675-76; PAR045911-32; PAR046258-63; PAR046271-78; PAR046672; PAR046813-16; PAR046820-23; PAR047107-10; PAR047299-307; PAR047393-95; PAR048503-12; PAR001041; PAR038982-9015; PAR039017-19; PAR039020-34; PAR039036-39; PAR039041; PAR039043-44; PAR039047-52; PAR039057-61; PAR039073; PAR039076-84; PAR039092-96; PAR039110-17; PAR03912-23; PAR039125-26; PAR039137-42; PAR039146; PAR039151-53; PAR039159; PAR039168-83; PAR039188-96; PAR039200-02; PAR039204; PAR039231 -32; PAR039236-37; PAR039241; PAR039277-79; PAR039283-301; PAR039309-11; PAR039314; PAR039316-17; PAR039319; PAR039322-24; PAR039328-32; PAR039390-302; PAR039396-400; and PAR041707-08; PAR/M036318; PAR/M036365-66; PAR/M027309; PAR/M028395-400; PAR/M024356; BOSO 12384-87; BOSO 12391-94; PAR002290-91; PAR002293-94; ADJ009357-58; BOS013030-01 BOS013033-34; BOX013215-16; BOS013218-19; BOS013397-98; BOS012398; ADJ009816-33; B0S26536-42; PAR/M026615-16; PAR003179; PAR003196; PAR042194; PAR/M038566; ADJ008985-88; PAR003420-3421; PAR042869-42870; PAR/M029634-37; BOS015580-81; PAR/030067-68; BOSO 14640-41; BOS010133-10136; BOS01063610639; ADJ04897-98; BOS009909-10; BOS01041213; AR/M027522-23; PAR007243-47; PAR/M027511-12; ADJ004232; PAR008057; BOS4225; PAR/M033001; PAR045099; BOS0141180-81; BOS024713-14; PAR009366-71; PAR/M025241-46; PAR/M025484; PAR010009-12; 2BOS002053-56; PARO 10349-52; PARO 10527-10529; PARO 10530-36; ADJ001880-86; BOS00731622; BOSO 183881-87; and PAR/M025220-26.
The Court, therefore, orders the defendants to return to C&I’s counsel all copies of the foregoing documents within thirty (30) days of this order, to make no further use of those documents in any manner, and to destroy all notes and other records of the contents of those documents.
The Court further orders C&I to reimburse the defendants for any reasonable costs incurred in the return of the documents, including all costs of creating CD copies of documents produced which do not include the inadvertently produced documents.

The defendants’ opposition alludes to “a veritable iceberg of potentially privileged and/or work product materials that C&I voluntarily turned over to the defendants almost a year *577 ago.” They imply a titanic struggle in the future. Here, however, this Court addresses only the documents identified in the C&I motion papers, as most recently revised. As to the other documents below the surface of the iceberg and, therefore, not yet in issue, the delay in seeking a return of these other documents may present insurmountable obstacles for C&I.

The numbers bandied about at oral argument were “closer to 300,000" [by' the defendants] and ”750,000" [by plaintiffs],

For purposes of these motions, the Court does not rely upon the characterization of the documents by Bayer’s counsel. Nothing said in the telephone conversation with counsel for C&I is taken as support for a waiver of the defendants’ position that some or all of the documents at issue may not qualify as privileged. Bayer’s counsel’s professional courtesy, however, warrants high praise, particularly in the face of the overly aggressive, dufy-of-zealous-advocacy driven, ethics Opinion of the Massachusetts Bar Association’s Committee on Professional Ethics. See MBA Comm. on Prof. Ethics, Op. 4 (1999).

The Court urges counsel for C&I to check this list carefully to insure that the Court correctly read the most recent filings' indication of which documents remain in play.

The vast majority of these documents — all but Bates-numbers PAR041707-08, PAR/M027309 and PAR009366009371 — were not included on C&I’s privilege log.

This finding relates only to the question of waiver by inadvertent production. It says nothing about the underlying issue of whether particular individual documents truly fit within the attorney-client privilege or the work product doctrine.