Agnes, Peter W., J.

Introduction

The Plaintiff, Eamonn McMahon d/b/a Extec Machinery (“Extec’j brings this civil action to collect outstanding balances from Universal Golf Construction Corporation (“UGC”) relating to rental equipment provided for construction of residences and a golf course for Shining Rock Golf Community, LLC (“Shining Rock”). Extec has filed a mechanics’ lien claim against Shining Rock under G.L.c. 254, Sec. 4. The matter before the court is a motion filed by Shining Rock to compel the return of an allegedly privileged document inadvertently produced to Extec during the course of discovery related to this claim. For the following reasons, the motion to compel is DENIED.

Background

The essential facts are not in dispute. In late March or early April of 2005, counsel for Shining Rock voluntarily submitted to Extec’s counsel a tabbed, indexed, 3 Ut-inch binder containing approximately 300 documents. Contained within this binder was a document entitled, “Notes to Universal Golf Notice of Contract and Litigation” (“the document”), which Shining Rock now maintains is a privileged memorandum. This six-page document contains financial information and notes regarding the contracts and work performed by UGC and various subcontractors, from Shining Rock’s perspective. It is not dated or marked as confidential, nor does it identify its author or intended recipient.
Shining Rock claims that the author of this document, Mr. Pearson, Shining Rock’s Project Manager, created a binder of documents for counsel’s use, which included the document. Counsel then asked Mr. Pearson to make some changes to the binder, including the removal of the document, and to submit it in connection with the discoveiy process. According to Shining Rock, due to a clerical mistake in counsel’s office, the original binder containing the privileged document was submitted to opposing counsel instead of the revised binder.
This error went unnoticed until June 1, 2005. On that day, Extec’s counsel marked “Notes to Universal Golf Notice of Contract and Litigation” as Exhibit 7 at Mr. Pearson’s deposition. Counsel for Shining Rock objected and requested the document’s return, stating adamantly that it was a privileged communication and that it had been inadvertently produced. After some verbal sparring, counsel for Extec agreed not to discuss the document for the time being, but reserved Extec’s right to re-open the deposition and to decide what to do with the document at a later time.
Five days later, on June 6, Extec attached the document, as Exhibit 7, to a Summary Judgment *60 Motion which it filed with the court. UGC claims that they first became aware of the document at this time, because of this public record, and that they never directly received a copy of the document. A week passed, and in a letter dated June 13, counsel for Shining Rock admonished Extec’s counsel over the use of the document. “I was quite surprised to see you include, as an exhibit to that motion, the document that we discussed at Stan Pearson’s deposition. As you know and as should have been obvious when you first saw that document, it is a privileged communication. It was inadvertently produced, at least, as far as I can tell.”
Two days later, Extec responded to the letter, requesting legal explanation and insinuating that they might be willing to return the document if Shining Rock would stipulate to various contract numbers. Shining Rock did not respond, and, on July 5, 2005, Shining Rock filed this Motion to Compel.

Discussion

Whether the attorney-client privilege was waived when “Notes to Universal Golf Notice of Contract and Litigation” was produced to Extec.
In order to show that a communication is protected by the attorney-client privilege, the parly attempting to assert that privilege must demonstrate: “(1) the communications were received from a client during the course of the client’s search for legal advice from the attorney in his or her capaciiy as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived.” In the Matter of the Reorganization of Electric Mutual Liability Ins. Co., Ltd., 425 Mass. 419, 421 (1997) {“EMLICO"), and cases cited. Although the document does not indicate a specific addressee, it is clearly addressed to someone, as opposed to a document which simply presents a general array of facts. Language used includes "you,” and, at times, the author requests legal research. “I would also like you to review whether a lessor can file a mechanics’ lien when it is a secured creditor.” The document also includes strategy-based commentary. “I would like to speak to you regarding the bank line issue. Our bank would like to fund our draws and perhaps we can get them to a comfort level where they can. I would rather the project continue on schedule.” Such language indicates that, regardless of whether it appeared as such on its face, this communication was quite likely intended to be private. This notion is augmented by Mr. Pearson’s deposition testimony that the document was drafted, “as a communication to my attorneys with explanations of some documents that I was forwarding to them.” While some of the facts set forth within the document were not themselves privileged, the document in its entirety falls within the definition of confidential communications relating to obtaining legal advice for purposes of the attorney-client privilege as set forth above. The remaining question, therefore, is whether the disclosure of this document by Shining Rock constitutes a waiver of the attorney-client privilege.
In the EMLICO case, the Supreme Judicial Court rejected the view that a document’s privileged status is lost simply because its contents become public. EMLICO, 425 Mass. at 422. This is described in EMLICO as the “traditional view,” id., 425 Mass.at 422, and in Amgen v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290-91 (D.Mass.2000), by Chief Judge Young as the “strict accountability” approach. Instead, the Massachusetts rule is that the inadvertent disclosure of a privileged document is not a waiver of the attorney-client privilege as to that document when the client establishes that adequate precautions were taken to ensure the document’s confidentiality. Id. at 422-23.[1] See Commerce & Industry Ins. Co. v. E.I. du Pont de Nemours & Co., 12 Mass. L. Rptr. No. 25, 574, 2000 WL 33223235 (Superior Ct., Dec. 11, 2000) (van Gestel, J.) (recognizing that because in all such cases a disclosure occurred, the precautions taken by counsel cannot be deemed insufficient simply because they failed).
In EMLICO, the issue of disclosure arose in the context of a party receiving privileged documents from “an anonymous source.” Id. at 420. However, because the issue of what rule should govern the determination of waiver arose in the context of a case that had already been dismissed in the trial court by the time the appeal was decided, the Supreme Judicial Court did not elaborate on its holding. “We recognize, of course, that the mere fact a document may have been stolen or disclosed in bad faith may suggest inadequate precautions have been taken. Where it can be shown, however, that reasonable precautionary steps were taken, the presumption will be that the disclosure was not voluntaiy and therefore unlikely that there had been a waiver.” Id. at 423.
The Massachusetts rule as established in EMLICO is consistent with the so-called “middle approach” described in and followed by Chief Judge Young in Amgen v. Hoechst Marion Roussel Inc., 190 F.R.D. 287 (D.Mass.2000). Under this approach, once a determination is made that a client has established that a document is privileged, the determination of whether the client has met its burden of establishing that it took adequate precautions to maintain the confidentiality of the document depends on a consideration of the totality of the circumstances including “(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure and (5) the overriding interest of fairness and justice.” Amgen, supra, 190 F.R.D. at 292. After an analysis of these contributing factors, a court may rule “either that the inadvertent disclosure has ef *61 fected a waiver of the privilege or that the privilege remains intact." Id. at 291.[2] The approach endorsed by the Supreme Judicial Court in EMLICO and Amgen is the majority rule in the United States. See 3 J.M. McLaughlin et al., Weinstein’s Federal Evidence §503.42[4] (2d ed. 2005) (describing three specific approaches to the issue of waiver of the attorney-client privilege as a result of an inadvertent disclosure and describing the “middle approach” as explained in this opinion as the predominant methodology).
The volume of discovery in this case was not significant. The documents submitted by Shining Rock to Extec fit into a 314-inch binder. Of the total produced, six pages comprised the privileged document. Compare Amgen, Inc., 190F.R.D. 287 (court concludes that the privilege was waived; 70,000 documents produced in twenty-three archive boxes, 3,821 of which were privileged and contained in one archive box that was inadvertently disclosed); Mira, Inc. v. Daniel O’Brien, 16 Mass.L. Rptr. No. 28, 707 (October 20, 2003) (privilege not waived; 583 pages, one of which was privileged, but inadvertent disclosure was understandable because it was a letter addressed to an attorney with the same last name as the defendant). There is no evidence suggesting that the document in question had ever been segregated from others that were included in the binder.
An additional consideration here is a statement by Shining Rock that it “consistently takes reasonable precautions to prevent the disclosure of privileged documents.” The memorandum then lists a number of such precautions, such as document segregation and review by counsel. However, that description alone sheds little if any light on what occurred in this case. Moreover, such steps were not by themselves enough to prevent waiver of privilege in Amgen, where precautions included the review of documents by five lawyers and two legal assistants, and segregation of all privileged documents into four small boxes. Id., 190 F.R.D. at 288-89. Here, by contrast, there is no evidence in the record that an attorney actually did review the binders that Mr. Pearson, a non-lawyer, edited and submitted for discovery.
Notably, Shining Rock did not act quickly to rectify its mistake once it became aware that a document had been inadvertently produced and, in fact, did not notice the disclosure at all until opposing counsel marked it as an Exhibit at least two months later. In Amgen, opposing counsel recognized within days that privileged documents had been inadvertently produced and notified the attorneys who had produced the documents; an agreement was made by telephone and by letter that veiy afternoon that the parties would refrain from using the documents until they were reviewed. While it might be said that counsel for Extec, knowing that an objection to use of the document had been raised, behaved somewhat sharply by filing it as an attachment in court three or four business days later without giving notice to opposing counsel, the burden is nonetheless on Shining Rock to take steps towards its retrieval. Twelve days passed between Mr. Pearson’s deposition and the first written communication indicating Shining Rock’s position. Over thirty days passed before Shining Rock filed its Motion to Compel. Weighing in favor of the waiver of privilege is Shining Rock’s failure to recognize its error and its failure to broadcast its position and intentions once recognition of the error surfaced.[3]
In terms of the overriding interest in justice and fairness, Shining Rock has not pointed to any other considerations that should influence the analysis.
The recipients of the privileged documents in Amgenwere receptive to opposing counsel’s concerns, and voluntarily refrained from reading or otherwise using the documents until the court issued its decision. 190 F.R.D. at 290. This response elicited a notation of respect from the court. Id. Extec’s decision to file and thus publicize the privileged document before the parties had an opportunity to assess the circumstances or to involve the courts does not merit such a salute. Nonetheless, after a careful assessment of the circumstances surrounding the inadvertent disclosure of “Notes to Universal Golf Notice of Contract and Litigation,” this court finds that the attorney-client privilege has been waived. Shining Rock simply has not met its burden of establishing that it took adequate measures to guard against the disclosure of the materials.

ORDER

For the reasons stated above, the defendant’s Motion to Compel is DENIED.

 A third approach described in Amgen v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290 (D.Mass 2000), as the “never waived” approach holds that a disclosure that was merely negligent can never be regarded as a waiver of the attorney-client privilege because the privilege holder did not intend it.

 In Amgen, the court explained why the alternative theories are unsuitable guides. The “never waived” view provides counsel with little incentive to act in a way that will safeguard the confidentiality of privileged attorney-client communications and may contribute to a lessening of the element of confidentiality which is at the heart of the privilege. The “strict accountability approach” undermines the confidentiality of privileged communications in another way by sacrificing that value in circumstances in which all reasonable precautions were taken to avoid a disclosure. See Id.., 190 F.R.D. at 292.

 Without additional information not contained in the record before me, this court is not prepared to state, as Shining Rock asserts, that Extec should have known that the document was privileged. Although the Massachusetts Bar Association’s Committee on Professional Ethics has advised that an attorney is not ethically bound to return a potentially privileged letter that has come into his position, see MBA Commission On Professional Ethics, Op. 4 (1999), the American Bar Association previously has taken the divergent view that an attorney in this position should either comply with opposing counsel’s request for a return of the document or refirain firom using the document until its fate is decided by the court. See ABA Comm, on Ethics and Professional Re *62 sponsibllity, Formal Op. 382 (1994). See Amgen, supra, 190 F.R.D. at 290 n.2 (noting the divergence of ethical opinions on this matter and describing the Massachusetts Bar Association opinion as one that has been “widely criticized”). Regardless of the prevailing views of local bar associations, it is more in keeping with the values safeguarded by the attorney-client privilege which are the cornerstone of the legal profession for counsel who become aware of what may be the inadvertent disclosure of materials protected by the attorney-client privilege to notify opposing counsel before publishing the material or otherwise making further use of it.