Wilkins, Douglas H., J.
In this contract and c. 93A action, the plaintiffs seek discovery of certain electronic records not previously produced in response to their requests for production of documents, served in September 2010, and this Court’s orders of May 16, 2011 and November 2, 2011. Despite the Court’s *381 efforts to encourage a cooperative approach, the parties have not agreed upon a method for accomplishing this electronic discovery. The Court therefore sets specific parameters for electronic discovery of the records in question and imposes the costs of this task upon the defendant, which has blocked this discovery long enough. It orders entry of a proposed amended confidentiality order, substantially in the form proposed by the plaintiffs, with an additional provision to protect privileged documents against inadvertent production. The Court also awards the plaintiffs their attorneys fees for their efforts commencing with their Motion for Order of Civil Contempt Pursuant to M.R.C.P. 37(b)(2) and for Appropriate Sanctions (“Motion”) and continuing through the present.
BACKGROUND
The plaintiffs, Jonathan E. Jensen, M.D., Front Range Gastroenterology, P.C. and Colorado Endoscopy Centers, L.L.C. (collectively, “Jensen”), brought this case on February 11, 2010, for alleged breach of the eClinical Works Software License and Support Up Front Agreement dated September 22, 2006 (“Agreement”) between Jensen and the defendant eClinical Works, LLC (“eCW’). Before bringing suit, Jensen sent a demand letter on February 11, 2009, setting forth their claims and estimating damages in the amount of $150,244.00. Among Jensen’s claims is the assertion that eCW fraudulently induced Jensen to purchase the software by knowingly making false representations about the Software’s capabilities. Because the complaint includes a c. 93A count, potential treble damages exceed $420,000.
Jensen served the contested request for production of documents on September 22, 2010. After receiving objections to seven requests, Jensen moved to compel production. The parties did not agree to a confidentiality order, forcing the Court to issue its own confidentiality order effective May 31, 2011. The Court also ordered production of additional documents. On June 13, 2011, eCW produced more than 6,000 previously-withheld documents.
On October 13, 2011, the plaintiffs filed the Motion, citing a number of publicly available sources of information showing complaints about the performance of eCWs software. The Court inferred from this information that there must have been additional documents associated with those complaints and declined to credit eCWs affidavit attesting to full production. The Court held a hearing on the Motion on October 27, 2011. On October 31, 2011, the Court entered the following order, docketed on November 2, 2011:
Motion (P#21) After hearing and review of the papers, the motion for a Rule 37 order is ALLOWED. Defendant shall forthwith allow plaintiff access to its servers to search for documents responsive to plaintiffs’ request. I do not credit the defendant’s affidavit in light of the arguments and exhibits presented by the plaintiffs showing that at least some of the matters not produced do fall within the time frame and parameters of the request. Any further relief shall await the results of the server search.
On November 23, 2011, the plaintiffs filed a motion to compel the defendant to comply with the October 31 Order. The Court held a hearing on November 29, 2011. On December 5, 2011, it further ordered that Jensen have access to eCWs servers to search for responsive electronically stored information, provided that “(d)ocuments dated or received after September 22, 2006 may be searched only if the documents reflect knowledge or statements before that date or are reasonably calculated to do so. There shall be no limitation as to customers.” The Court allowed the parties until December 9, 2011, to agree upon an independent vendor to perform the necessaiy technical consulting services. The Court deferred action on the plaintiffs’ request for a budget of $10,000 for the consultant, payable by the defendants. On December 19, the Court denied the defendant’s motion for reconsideration, filed December 15, 2011.
Jensen engaged Stroz Friedberg, LLC (“Stroz Friedberg”) as its forensic consultant and executed an agreement. Pursuant to the Court’s order, the parties met on December 16,2011 to “discuss how the Analyst can best determine what records and documents can be searched and how they can be searched.” Also pursuant to the order, the parties filed the consultant’s written summary of the scope and manner of the search on December 23,2011 and filed their proposals on December 26, 2011.
Before the December 16, 2011 site visit, Stroz Friedberg sent a list of questions to eCW. While the parties did discuss matters at that meeting, eCW has failed to provide basic information in response to such questions as:
What electronic locations have already been accessed, secured or searched in order to produce the documents that have previously been provided in discovery?
How are emails stored by eCWs offsite “Rackspace” vendor archived, where else might relevant emails be found; and how can they be searched?
What “fields” are included in the data bases to be searched?
These are basic questions, seeking information that is essential to conduct an effective and efficient search for documents. The enumeration of these questions is not intended to limit the information that eCW should reasonably provide to facilitate the court-ordered search of electronic data, including the information sought by Mr. Titus in his emails of December 22 and 23.
eCW does not contend that it answered these questions, choosing instead to attack Stroz Friedberg’s timing in posing the questions. The questions are, *382 however, an obvious and natural outgrowth of the preliminary questions that were relayed to the defendant by email dated as early as December 13, 2011. In any event, nothing about the timing changes the inherent reasonableness of the questions or the fact that any reasonable defendant, committed to a good faith resolution of this discovery issue, would have provided the information. Even now, more than a month after the December 16 meeting, eCW chooses to litigate rather than cooperate. eCWs choice not to answer these questions makes it more than equitable for eCW to bear the full cost of obtaining this information. eCW has no cause for complaint that Stroz Friedberg may end up duplicating some of eCWs efforts, where it will not even disclose what efforts, if any, it has already' made. Indeed, refusal to provide such basic information gives rise to the inference that eCW believes that the answers could put it in a bad light.
The site visit revealed that relevant data may be found on certain company servers. There is no need to access “tape backup” servers. The emails stored by “Rackspace” are fair game, where eCWhas failed to provide information to assess the cost or usefulness of accessing those emails. In addition, it appears that some employees’ computer hard drives may contain the requested information. While these may not be “servers” within the meaning of the Court’s December 5, 2011 order, they are certainly sources of accessible and potentially responsive information. eCW should have searched them as part of its prior responses to this Court’s May 16, 2011 order. Since it has refused to detail its prior search parameters, it may be that no effort was made to search those hard drives. Therefore, the Court orders that Jensen have access to those hard drives and that Stroz Friedberg have the opportunity to conduct interviews with any employees who may reasonably be thought to have responsive information on their hard drives. Without limiting the number of employees, eCW shall not object to the burdensomeness of such interviews at least until the number of employees so interviewed exceeds 20.
I find that the burden imposed upon eCW (some of which it has effectively imposed on itself through its intransigence) is reasonable in light of the amount in controversy, whether that amount be $150,000 or the treble damage amount in excess of $420,000. Moreover, it appears that eCW has revenues exceeding $150 million as of 2010. The burden is therefore commensurate with the task, in light of the equities.
DISCUSSION
Under Mass.R.Civ.P. 37(a) and (b), the Court has broad authority to make such orders as are just when presented with a failure to produce documents in response to a request for production of documents and a court order compelling production. The Court therefore approaches the Motion not only with the guidance of the proposed Massachusetts rule essentially adopting Fed.R.Civ.P. 26(b)(2)(B) and (C), but also mindful of the failure of previous incremental steps to resolve this persistent discovery dispute.
That said, it appears that the information sought by Jensen would qualify as “reasonably accessible” even under the proposed amendments to Rule 26. The information on existing servers obviously meets that test. So does information saved by individual employees on their own computers. eCW would ordinarily have the burden to show that the Rackspace data are inaccessible. In any event, given Jensen’s request for information on that topic and eCW’s failure to respond, the Court treats the Rackspace information as accessible not only under Rule 26, but also as a part of formulating a ‘just" order under Rule 37. By this time, eCW should have searched these items and should have interviewed all employees reasonably likely to have such information. It should bear the expense of conducting that task now.
Stroz Friedberg will undoubtedly need to interview eCW employees to determine whether and how they may have saved responsive information on their computers. That task will, of course, also require inquiry into any data deletion, purge or overwriting policy, as well as the nature of any litigation hold placed on such information. The number of employees who may have such information is not clear. Stroz Friedberg should be entitled to interview each employee who reasonably may have such information. To avoid immediate disputes, however, the Court rules only that any number of interviews equal or less than 20 shall be conclusively presumed reasonable and may not be the subject of a protective order.
At this point, it is clear that eCW has refused to cooperate in good faith with this Court’s order of December 5, 2011, if not the order of May 16, 2011, as well. Jensen has had to expend attorneys fees to protect its rights. It also has^ had to engage Stroz Friedberg in that effort. Mass.R.Civ.P. 37(a) and (b) authorize the Court to impose costs and attorneys fees against a party for non-compliance with a Court order. In December, the Court remained unconvinced that it should establish a consultant’s budget of $10,000, payable by the defendants. The defendants’ continued intransigence and lack of good faith cooperation convince the Court that the time has come to set such a budget. Otherwise, nothing but further foot-dragging and narrow reading of the Court’s order can be expected. eCW is liable for the $10,000 retainer required by Stroz Friedberg, as well as any attorneys fees incurred in connection with the Motion and subsequent proceedings in this case related to enforcement of the Court’s May 16 order. As stated in the order below, costs, fees and expenses caused by the defendant’s *383 refusal to answer Stroz Friedberg’s questions are not to be credited against this $10,000 amount and shall constitute an additional liability of the defendant.
Finally, eCW has requested additional provisions in the protective order in light of the upcoming production. The Court’s existing Protective Order, as modified by Plaintiffs’ Proposed Amended Confidentiality Order, is sufficient to protect eCWA interest in commercially sensitive or confidential information. Jensen also points out, correctly, that eCW’s. proposal allows for additional disputes and delay in production of documents. Given the track record of this case and the parties’ inability to agree on much if anything, I will not enter an order that allows such disputes or delay. eCW raises a valid point regarding the potential for electronic discovery to result in inadvertent disclosure of privileged documents. Accordingly, the Court will add a provision to Jensen’s proposed amended confidentiality order clarifying that inadvertent production of privileged documents shall be governed by In the Matter of the Reorganization of Electric Mutual Liability Ins. Co., Ltd., 425 Mass. 419, 421 (1997), and Amgen v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 292 (D.Mass. 2000). The burden of bringing a motion for clawback in the event of a disagreement should rest upon the defendant, given its propensity to interpose costly objections. Obviously, more cooperation by eCW might have led to an agreed supplemental order more to its liking, but the parties have opted instead to let the Court decide.
CONCLUSION
After hearing upon the Motion and upon consideration of the parties’ written submissions, the Court ORDERS:
1. Defendant’s Motion to Limit Discovery of Electronically Stored Information and Shift Some or all of the Costs of Production to the Plaintiff is DENIED.
2. Defendant eClinical Works, L.L.C.’s Motion for Order Regarding Production of Privileged, Confidential or Otherwise Protected Documents and Information is DENIED.
3. Plaintiffs Proposed Amended Confidentiality Order is ADOPTED as an order of the Court, superseding the previous protective order, provided that a new paragraph 7 shall be added, reading: “Any inadvertent production of privileged information shall be governed by In the Matter of the Reorganization of Electric Mutual Liability Ins. Co., Ltd., 425 Mass. 419, 421 (1997) and Amgen v. Hoechst Marion Roussel Inc., 190 F.R.D. 287, 292 (D.Mass. 2000). Privileged information for this purpose shall not include customer names or other commercially sensitive information, which shall be disclosed without redaction, subject to the protections of the above paragraphs. Any dispute regarding inadvertent production shall be resolved, after a Rule 9C conference in person, by a motion filed pursuant to Rule 9A by eCW. As a sanction for prior discovery violations by the defendant, the plaintiffs shall have no burden to file any motion with respect to allegedly inadvertently produced documents or to destroy any such documents prior to a ruling by the Court notwithstanding the provisions of the proposed amendments to Mass.RCiv.P. 26(5)(f), although they shall take steps to sequester the information and prevent further dissemination upon receiving notice that the defendant intends to file a motion hereunder.” The plaintiffs will resubmit a form of order that includes its proposal plus paragraph 7, for entiy by the Court.
4. Defendant shall forthwith allow Stroz Friedberg access to all potentially responsive information (a) on existing servers, (b) saved by individual employees on their own computers and (c) included in Rackspace data. To identify such servers and Rackspace data, Stroz Friedberg shall be entitled to interview all eCW employees who are reasonably likely to have such information, as well as Rackspace. The defendant shall not object to interviews of up to 20 employees. Counsel may be present at the interviews, but shall not interpose himself or herself between the interviewer and the interviewee; nor shall he or she impede or interfere with the interview. The Court reiterates and clarifies that documents dated or received after September 22, 2006 may be searched only if there is a reasonable expectation that the documents may reflect knowledge or statements before that date or are reasonably calculated to do so. There shall be no limitation as to customers.
5. The Defendant shall bear the cost of Stroz Friedberg’s $10,000 retainer. It shall also bear any additional costs, fees and expenses of (a) conducting the interviews set forth in paragraph 4 above and (b) obtaining the information set forth in the bulleted questions on page 3 of this order, which eCW may not credit against its liability for the $10,000 retainer. All sums owed pursuant to this paragraph shall be paid within 15 days of demand by the plaintiffs. The award of costs, fees and expenses pursuant to this paragraph is without prejudice to further requests by the plaintiffs for cost shifting to the defendant.
6. The plaintiffs are entitled to their attorneys fees and expenses incurred with respect to the Motion and all subsequent efforts to obtain the discovery sought by that Motion. The plaintiffs shall serve a motion for attorneys fees and expenses pursuant to Superior Court Rule 9A on or before February 15,2012 and shall timely file the Rule 9A package.