SUPERIOR COURT 
 
 VIGOR WORKS, LLC VS. WHITE SKANSKA, JV

 
 Docket:
 CA 16-02146-BLS1
 
 
 Dates:
 February 12, 2019
 
 
 Present:
 
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 '
 
 

 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL RETURN OF PRIVILEGED DOCUMENTS 
            This action arises out of the construction of the Fore River Bridge Replacement Project in Quincy and Weymouth, Massachusetts (the Project). The defendant White Skanska, JV (WS) was the general contractor on the Project and the plaintiff, Vigor Works, LLC (Vigor) was one of the subcontractors. A description of the facts underlying the dispute between Vigor and WS is unnecessary for the resolution of the motion now before the court.
            Vigor asks the court to order WS to return or destroy two documents that Vigor asserts contain attorney/client communications and were inadvertently produced to WS during discovery. The two documents are: (1) a four page email sent by Vigor's attorney to a Vigor executive that was, as part of the document production process in this case, apparently imaged together with (a) a letter to WS that included a marked-up copy of a draft of the subcontract between the parties and (b) a FedEx cover sheet addressed to John Pecora of J.F. White Contracting,[1] although it has since been determined that the email was never FedEx'd to WS (the FedEx documents); and (2) a draft letter to John Pecora that had pasted into it the same four page
---------------------------
[1]One of the two entities that make up the WS joint venture. Hereafter, referred to as WS for simplicity.
                                                            -1-
email from Vigor's attorney (the Draft Letter). The FedEx documents and the Draft Letter have been submitted to the court under seal. It is clear that the email incorporated into both of these documents is a communication from Vigor's attorney to Vigor in which the attorney provides legal advice concerning an early draft of the subcontract between Vigor and WS. Indeed, WS does not contend that the email does not constitute a quintessential attorney/client communication. Rather, WS argues that its disclosure was not "inadvertent" and, therefore, under M. R. Civ. P. 26(b)(5)(B) and the parties' so-called "Clawback Agreement," it is not obligated to return the documents. For the reasons that follow, although an exceedingly close question, the court orders the documents returned.
            FACTS UNDERLYING THE PRODUCTION OF THE DOCUMENTS TO WS
            On November 13, 2018, Vigor discovered that it had previously produced the FedEx documents during discovery. It is not clear when that production occurred, although it was likely more than a year before this discovery. The FedEx documents were identified for review as potentially privileged. However, because they were scanned together as if a single item, it appeared that the four page attorney email had been FedEx'd to a WS representative before the subcontract was signed in 2013. For that reason, the FedEx documents were produced. Further investigation in November, 2013 revealed that the attorney email had not been included in the FedEx package. This was confirmed by the fact that WS did not have them in its files prior to their being produced in this litigation.
            As to the Draft Letter, a litigation support vendor engaged to assist in the document production failed to identify it as potentially privileged, although the name of the attorney author was a search term in the ESI review protocol and this should have caused the Draft Letter to be
                                                            -2-
flagged. Nonetheless, it was not set aside for attorney review due to an error in the vendor's processes and therefore it was produced without prior review.
                        WHAT CONSTITUTES INADVERTENT PRODUCTION?
            Mass. R. Civ. P. 26(b)(5)(B) and (C) were added to the Rule 26 in 2014 to address the problem of inadvertent production of attorney/client privileged documents. Inadvertent disclosure, with resulting waiver of the privilege, has been increasingly difficult to control as the volume of documents required to be produced in commercial litigation has exponentially increased and privileged materials are often "embedded in voluminous material in electronic format that has been turned over in discovery." Subsection (B) and (C) are drawn from the cognate Federal Rule of Civil Procedure and Rule 502 of the Federal Rules of Evidence. See Reporter's Notes to 2014 Amendments. Rule 26(b)(5)(B) is referred to as a "clawback" provision. It provides that in determining whether to permit "clawback" of a privileged document produced during discovery, "the court should determine whether:
            (i)         the disclosure was inadvertent;
            (ii)        the holder of the privilege or protection took reasonable steps to prevent disclosure, and
            (iii)       the holder promptly took reasonable steps to rectify the error."
The Reporter's Notes also state that, "there is nothing in the rule that precludes the parties from modifying the procedures set forth in the rule to deal with information within the scope of a privilege or protection." Id
            In the present case, as in many commercial litigations between sophisticated parties, the parties entered into their own "Clawback Agreement" addressing this issue. Among other things, this Clawback Agreement provides a definition for "inadvertent" which states that:
                                                            -3-
production is inadvertent if a document was produced notwithstanding that the producing party "performed a reasonable search for Privileged Documents" by looking in the places where such documents could reasonably be expected to be located. There is also a further definition of "reasonable search." It means "the implementation of review methods which consist of the following: the use of keyword searches to isolate electronic documents that include the names of attorneys. . . ; the review by counsel of all potentially Privileged Documents identified by said keyword searches." The Clawback Agreement goes on to provide the procedures to be used once a party learns that it has produced a privileged document that it wants to 'clawback:
            Consistent with the suggestion in the Reporter's Notes to the 2014 amendments the court will use the parties' own quite lengthy Clawback Agreement to measure inadvertence.
WERE THE TWO DOCUMENTS HERE AT ISSUE INADVERTENTLY DISLOSED?
            The Draft Letter appears to be a paradigm example of an inadvertently disclosed, privileged communication. There was a protocol in place to identify potentially privileged documents that met the requirements that the parties spelled out in the Clawback Agreement. The name of the attorney who authored the communication was among the search term filters. The initial search was to be undertaken by a competent litigation support firm which was to apply the filter to an electronic database. The support firm failed to execute the protocol properly with the result that the document was not set aside for manual review.[2] As soon as Vigor realized that it had been produced it asked for return.
---------------------------
[2] The cases WS cites in support of its contention that the Draft Letter is not privileged are entirely inapposite. The privileged material included in the Draft Letter was removed before it was sent to the intended recipient. The argument that a draft that was amended to remove the privileged material before it was sent resulted in waiver is not convincing.
                                                            -4-
            The FedEx documents present a much more difficult question. There, the four pages in question were an email from counsel to Vigor explicitly providing legal advice regarding the draft subcontract that had been sent to Vigor's attorney for his review. The search protocol identified the document for manual review of a potentially privileged communication. Apparently, the fact that these four page were imaged as the pages next following a FedEx cover sheet led the attorney conducting the review to assume they were sent to the addressee on the cover sheet in January, 2013, and the attorney included them in the documents to be produced. It was not until more than a year had passed and summary judgment motions had been argued that another of Vigor's counsel apparently realized that this email had been produced, investigated its provenance, and concluded that it had not been sent to WS with the FedEx cover sheet. Certainly, that investigation could have been performed when the FedEx documents were flagged for review before production. The four pages are quintessential attorney/client communications. While one can conceive of reasons why I client might decide to send them to the party on the other side of a contract negotiation, it is an oddity—especially in the form sent. On the other hand, in a large scale production where hard copy documents are scanned for inclusion in an electronic database, that scanning would not likely be performed by a lawyer and mistakes concerning what pages were a part of what document can certainly occur.
            Rule 26(b)(5)(B) and the parties' further refinement of the concept of 'inadvertent disclosure' in the Clawback Agreement appear principally designed to protect a party that inadvertently allows a privileged document to slip through its screens and filters and be produced without attorney review. On their face, they do not directly address the circumstances that the court confronts in this case: a document was flagged, reviewed by an attorney, and consciously included in a document production as a result of an error that occurred in the analysis of the
                                                            -5-
document. The Merriam Webster on-line dictionary defines 'inadvertent' as: "not focusing the mind on a matter : inattentive." www.merriam-webstencom/dictionary/inadvertent; Jan. 4, 2019. Here, attention was paid and the mind focused, but a mistake was made, perhaps because of a lack of sufficient attention. Nonetheless, given the juxtaposition of the FedEx cover sheet and the privileged email, the mistake is understandable.
            The parties have cited a number of cases to the court, but none seem particularly applicable; in one manner or other, they all seem to address the reasonableness of precautions taken to identify potentially privileged documents and set them aside for attorney review. No case appears to address a situation in which the protocol worked, a lawyer reviewed the document, but mistakenly concluded that the privilege did not apply, when further investigation would have revealed that the document had not previously been sent to WS and was a privileged communication. And yet, given the way in which the documents were imaged, that was not an unreasonable conclusion.
            The seminal case in which the Supreme Judicial Court (SJC) examined the concept of waiver and privilege is In the Matter of the Reorganization of Electric Mutual Liability Ins. Co. Ltd. (Bermuda), 425 Mass. 419 (1997). There the SJC reminds us that the rule that any disclosure of a privileged communication destroys the privilege has long since been discarded, and the modern trend is toward the view that inadvertent disclosure does not impair the privilege, if reasonable precautions against disclosure were taken. Id. at 422. Further, the privilege belongs to the client. Id at 421. While lawyers may of necessity become the guardian of privileged documents during discovery, if reasonable precautions for security are in place, a lawyer's mistake that seems reasonable under the circumstances, ought not prejudice the client. See also Commerce & Industry Ins. Co. v. E.I.l Du Pont De Nemors and Co., 12 Mass. L. Rptr. 574 (Dec.
                                                            -6-
11, 2000) (van Gestel, J.).
            Under the circumstances presented here, the disclosure while arguably preventable with more careful attention was nonetheless inadvertent.
                                                A FINAL NOTE ON CONTENT
            WS argues that the court should consider the content of the privileged communication in deciding whether to order it returned. Outside of the crime/fraud exception to the attorney/client privilege, which has no application in this case, the court disagrees. A court should not decide whether to order a privileged document returned or destroyed based upon what the communication says. There is, however, one aspect in which this issue is a little like the bell that cannot be unrung. No witness ought to testify in a manner that it is inconsistent with the information communicated in the email. As with statements suppressed because they were obtained in violation of a defendant's constitutional rights, they may still be used to assess the defendant's credibility if he testifies at trial in contradiction of those suppressed statements. See Commonwealth v. Mahnke, 358 Mass. 662, 695-695 (1975). By mentioning this, the court is not suggesting that it has any reason to believe that any Vigor witness would testify in that manner.
                                                            -7-
ORDER
            For the foregoing reasons, the court orders that so much of the FedEx documents and Draft Letter that include the four page email from Vigor's attorney be returned or destroyed.
@/s/Mitchell H. Kaplan Justice of the Superior Court
@February 12, 2019
                                                            -8-
xxz